UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANE WHISMAN,

       Plaintiff,         Case No.  08-12133
                                  HON. BERNARD A. FRIEDMAN
                                  MAGISTRATE JUDGE MICHAEL HLUCHANIUK
v.

COMMANDER MAJOR P.
REGUALOS, *et al.*,

       Defendants.
_____/

## OPINION AND ORDER ACCEPTING AND ADOPTING MAGISTRATE JUDGE HLUCHANIUK'S REPORT AND RECOMMENDATION DATED JULY 6, 2011, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.     Introduction**

This matter is before the Court on Magistrate Judge Michael Hluchaniuk's Report and Recommendation ("R and R") dated July 6, 2011 regarding a summary judgment motion on a complaint filed following the death of Timothy Whisman at Selfridge Air National Guard Base ("Selfridge").  Mr. Whisman was shot and killed at Selfridge during a high speed chase between him and multiple Selfridge officers after he failed to stop his vehicle at the guard station at Selfridge's main gate.

The R and R recommends that the Court grant Defendants' motion for summary judgment.  Plaintiff filed an objection to the R and R, and Defendants filed a response to Plaintiff's objection.

The Court has had an opportunity to review this matter, and believes that the Magistrate

1

Judge reached the correct conclusions for the proper reasons. The Court hereby adopts pages 1-25 of the R and R, comprising the procedural and factual history of this matter, into this Opinion and Order as though restated herein, with the exception of a single stipulated objection, discussed below.

**II.  Analysis**

Plaintiff Diane Whisman's complaint, filed following the death of Mr. Whisman at Selfridge, alleges that Defendants Christian, Heatley, King, Mitchell, and Werhmnyak violated Mr. Whisman's Fourth Amendment right to be free from unreasonable force when being seized by law enforcement officers, as well as his constitutional right to have timely medical attention secured for him after Defendant Mitchell shot him. Plaintiff further alleges that Defendant Lt. Co. Regualos violated Mr. Whisman's constitutional rights by failing to properly investigate the incident that led to Mr. Whisman's death, failing to properly train Selfridge's security forces, and failing to provide spike strips for use by Selfridge's security forces.

Plaintiff lists nineteen objections to the R and R.

**Objection 1:** Plaintiff objects to the statement on page 5 of the R and R that Mr. Whisman "swerved around" the initial Traffic Control Point ("TCP") that was set up in an effort to stop Mr. Whisman after his vehicle drove through Selfridge's main gate without stopping at the guard station. Plaintiff contends that Mr. Whisman drove his car in the egress lane that allows vehicles to "maneuver around the TCP," and that he did not "swerve."

Regardless of whether Mr. Whisman "swerved around" or "maneuver[ed] around" the

TCP, it is undisputed that he evaded an attempt to stop his vehicle. Plaintiff's objection as to the language used to describe this occurrence is immaterial to the Court's analysis, and is overruled.

**Objection 2:** Plaintiff objects to the representation in the R and R that "children were standing on the side of the road" during the car chase. The R and R does not state that children were standing on the side of the road, but rather notes that the parties disagree about whether adults pulled children back from the road as Mr. Whisman drove past a Selfridge housing area.

It is undisputed that Mr. Whisman drove at high speeds through a residential area. Even if there is a question of fact regarding whether adults pulled children back while Mr. Whisman drove through the residential area, this issue does not impact the summary judgment recommendation. Accordingly, this objection is overruled.

**Objection 3:** Plaintiff objects to the description of a second collision between Mr. Whisman and Defendant Mitchell, contained on pages 7 and 8 of the R and R. Defendants agree that they do not allege that Mr. Whisman struck Defendant Mitchell's vehicle a second time. Accordingly, all reference to a second collision between Mr. Whisman and Defendant Mitchell is deemed stricken from the adopted factual recitation.

**Objection 4:** Plaintiff objects to footnote 1 on page 8 of the R and R regarding Defendant Mitchell's testimony.

First, Plaintiff states that Defendants "now agree" that Mr. Whisman did not stop his vehicle in the control tower parking lot, and that Defendants "now admit that Sgt. Mitchell lied

3

as to the events in the control tower parking lot." Defendants object to this characterization of their position, arguing that they maintain that even if Plaintiff provided evidence that Mr. Whisman did not stop his vehicle in the parking lot before striking Defendant Mitchell's vehicle and the parked vehicle, it is not a material issue of fact that should defeat summary judgment. The Court agrees, as it is immaterial whether Plaintiff's vehicle was stopped before striking Defendant Mitchell's vehicle; the relevant fact is that the collision occurred.

Next, Plaintiff argues that footnote 1 is "simply wrong and should be struck in its entirety." Plaintiff argues that evidence regarding Defendant Mitchell's credibility should have been admitted, and therefore Defendant Mitchell's testimony regarding the details of the chase should be discounted. However, the Court finds that the conclusion within footnote 1 that "even if this evidence were admitted and Sgt. Mitchell's testimony was undermined, it creates no issue of material fact, [as] defendants still had sufficient reason to believe that their lives and the lives of Selfridge residents were in danger before deciding to employ deadly force," is correct.

Third, Plaintiff argues that the evidence shows that Defendant Mitchell lied when he broadcast over the radio that Mr. Whisman had used his vehicle as a weapon. The R and R explains that it is undisputed that Mr. Whisman intentionally and recklessly drove his vehicle at Defendant Mitchell's vehicle head-on in the control power parking lot. In addition, Mr. Whisman drove his vehicle at Officer Berry, Sgt. Vermeesch, and Senior Airman King, causing each of them to move out of the way to avoid being struck. Based on these facts, it is clear that Mr. Whisman used his vehicle as a weapon, and Defendant Mitchell's broadcast to that effect was not a lie. Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992)("[A] car can be a deadly weapon.")

Fourth, Plaintiff objects that the R and R ignores the relevant legal standard on whether deadly force is reasonable. The R and R correctly discusses the legal standard for the use of deadly force as it applies to summary judgment and qualified immunity, as well as how it applies to the facts of this case in numerous places, including pp. 26-38 and 33-41. Plaintiff's objections are overruled.

**Objection 5:** Plaintiff objects to the R and R's characterization of the events at the TCP set up by Officer Canty. Plaintiff asserts that Officer Canty's report states that Mr. Whisman avoided Officer Canty's blocking position "without incident." Review of Officer Canty's report shows that he made no such statement, and the R and R's description of Officer Canty's report regarding his TCP is accurate. Plaintiff's objection is overruled.

**Objection 6:** Plaintiff objects to the recitation of the facts on the top of page 11 of the R and R regarding whether there was a collision between Mr. Whisman's car and both Defendant Mitchell's vehicle and a parked vehicle in the vicinity of the TCP. As explained above, neither party asserts that there was a second collision at the TCP, and the Court does not make such a finding. Any conclusions within the R and R that there was a second collision are not adopted for the purpose of this Opinion and Order.

**Objection 7:** Plaintiff argues that there is not testimony to support the statement on page 8 of the R and R that moments before the pursuit came to an end, "Whisman maneuvered his vehicle to prevent Sgt. Mitchell and Sgt. Christian from passing him." However, Sgt. Christian's

written statement described Mr. Whisman as "[o]nce again swerving toward both units" as he and Sgt. Mitchell chased Mr. Whisman up Jefferson Avenue. In addition, Sgt. Christian testified at his deposition that Mr. Whisman "cut Sergeant Mitchell off. . . and started to swerve back into my lane back in front of me. . ." This testimony supports the statement in the R and R that "Whisman maneuvered his vehicle to prevent Sgt. Mitchell and Sgt. Christian from passing him." Plaintiff's objection is overruled.

**Objection 8:** Plaintiff objects to the finding at pages 26-29 of the R and R that Defendants Christian, Heatley, King, Mitchell and Werhnyak did not seize Mr. Whisman because the shots that they fired did not hit Mr. Whisman. Plaintiff argues that the R and R does not address the Sixth Circuit's opinion, *Floyd v. City of Detroit*, 518 F.3d 398 (6th Cir. 2008), regarding this legal issue.

The R and R both addresses *Floyd* and distinguishes it from the instant matter. Here, unlike in *Floyd*, it is undisputed that Mr. Whisman was aware that he was being pursued yet still chose to flee the security forces. As noted in the R and R, this case is on point with *Adams v. City of Auburn Hills*, 336 F.3d 515 (6th Cir. 2003) and *Cameron v. City of Pontiac*, 813 F.2d 782 (6th Cir. 1987), where no seizure was found to have occurred when officers shot and missed a fleeing suspect, and the missed shots did not cause the suspect to surrender. Plaintiff's objection is overruled.

**Objection 9:** Plaintiff objects to the facts stated on page 28 of the R and R.

First, Plaintiff argues that his vehicle and the officers' vehicles were not in a dangerous

high speed chase. However, as noted in the R and R, Mr. Whisman was pursued for approximately 15 minutes and 12.2 miles by numerous marked security vehicles with flashing lights and sirens activated; he drove around multiple TCPs; he drove his vehicle directly at a number of security personnel; and he drove in this manner near a residential community. The chase, averaging 50 mph in an area marked with speed limits of between 25 mph and 35 mph, was both high speed and dangerous.

Further, Plaintiff argues that "the officers who had to jump out of the way of Mr. Whisman's vehicle placed themselves in danger, by standing in the egress lane, waving their arms." This argument is not compelling, as those officers faced the choice of remaining in their vehicles and risking injury if Mr. Whisman drove into their vehicles, or getting out of their vehicles and risking injury if Mr. Whisman tried to run them over. Based on the events of the chase, it can hardly be said that the officers "placed themselves in danger." Plaintiff's objection regarding the facts stated on page 28 of the R and R is overruled.

**Objection 10:** Plaintiff objects to the characterization on page 34 of the R and R that he traveled onto Selfridge at a speed exceeding the posted speed limit. While it is unclear whether he traveled *onto* Selfridge at an excessive speed, it is undisputed that while the posted speed limits were between 25 mph and 35 mph, he covered 12.2 miles in fifteen minutes, averaging close to 50 mph. Whether his journey began at an excessive speed upon his entry onto Selfridge, or built up to such speeds is irrelevant. Plaintiff's objection is overruled.

**Objection 11:** Plaintiff objects to the R and R's reliance on *Scott v. Harris*, 550 U.S. 372 (2007). *Scott* regards a party "who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight." Scott v. Harris, 550 U.S. at 384.

As the Supreme Court stated in *Scott*, "in judging whether [a defendant's] actions were reasonable, we must consider the risk of bodily harm that [defendant's] actions posed to [the suspect] in light of the threat to the public that [the defendant] was trying to eliminate." Scott, 550 U.S. at 383. The Supreme Court's holding in *Scott* is applicable to the instant matter, and Plaintiff's objection is overruled.

**Objection 12:** Plaintiff objects to the analysis in the R and R at pages 35-41 regarding the grant of qualified immunity. Plaintiff argues that contrary to the recommendation of the R and R, the holding in *Floyd v. City of Detroit*, 518 F.3d 398 (6th Cir. 2008) supports Plaintiff's claims.

*Floyd* can be distinguished from the instant matter. While qualified immunity to defendant officers was denied where the *Floyd* plaintiff did not attempt to evade the officers, here Mr. Whisman was armed with the deadly weapon of his vehicle, was fleeing officers while involved in a lengthy high speed chase, and refused to cease his flight.

Plaintiff further relies on Defendant Christian's testimony that at the time Defendant Mitchell shot Mr. Whisman, Defendant Christian did not believe that Mr. Whisman's behavior placed him or anyone else in imminent harm.

Regardless of Defendant Christian's testimony, it is clear that a tremendous risk of death or serious bodily harm arose from Mr. Whisman's conduct throughout the chase. Further, it is

apparent that three other Defendants, all of whom fired shots at Mr. Whisman, believed that the use of deadly force was necessary and appropriate at the time they fired. Plaintiff's objection is overruled.

**Objection 13:** Plaintiff objects to pages 37-40 of the R and R, and argues that the instant matter can be distinguished from *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992). In *Smith*, the Sixth Circuit held that an officer that fired a fatal shot at a suspect who "had proven he would do almost anything to avoid capture," and who posed a significant threat to officers that had set up a roadblock in the suspect's path of travel, was entitled to qualified immunity. Id. Further, as in this case, the suspect in *Smith* used his car as a weapon. The *Smith* court held that the officer's decision to stop the car from possibly injuring others was reasonable. The Court finds the application of the *Smith* holding to the instant matter appropriate, and Plaintiff's objection is overruled.

**Objection 14:** Plaintiff objects to the conclusion at pages 45-49 of the R and R that Defendant Lt. Col. Regualos cannot be found liable on Plaintiff's failure to train claim. Plaintiff reasserts her arguments that the individual defendants' use of deadly force amounted to constitutional violations against Mr. Whisman. Therefore, Plaintiff argues that based on the individual Defendants' constitutional violations, Defendant Regualos should be held liable on a failure to train theory.

As set forth in the R and R, and upheld in this Opinion and Order, the underlying use of deadly force was reasonable. Accordingly, Defendant Regualos cannot be held liable on a

failure to train theory. Plaintiff's objection is overruled.

**Objection 15:** Plaintiff objects to the recommended dismissal of her failure to communicate/gross negligence claim. She argues that her failure to communicate/gross negligence claim is separate and distinct from her excessive force claim, and should proceed.

As explained in the R and R, Plaintiff's failure to communicate/gross negligence claim is nothing more than an attempt to transform her excessive force claim into one for gross negligence. Plaintiff's objection is overruled.

**Objection 16:** Plaintiff objects to the recommended dismissal of her assault and battery claim. Under Michigan law, deadly force is justifiable "if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm." People v. Heflin, 434 Mich. 482 (1990). Further, deadly force is justifiable if there is "a significant threat of death or serious physical injury . . . [to] others." Washington v. Starke, 173 Mich. App. 230 (1988).

Mr. Whisman intentionally placed Selfridge officers and residents in danger of death or serious physical injury by unlawfully engaging in a reckless high-speed chase and by using his vehicle as a weapon. Plaintiff points out that Defendant Christian testified that he did not believe that Mr. Whisman's driving placed him in the way of imminent harm. However, the record demonstrates that the other Defendants and the Selfridge residents were in danger of death or serious physical injury, regardless of Defendant Christian's subjective beliefs. Accordingly, the recommendation of the R and R is proper, and Plaintiff's objection is overruled.

**Objection 17:** Plaintiff objects to the recommendation that her claims of negligent failure to train and negligent failure to purchase spike strips are subject to the discretionary function exception of the Federal Tort Claims Act.

The conclusion in the R and R that failure to train claimsfall within the Federal Tort Claims Act exception is correct. Gager v. United States, 149 F.3d 918, 921-22 (9th Cir. 1998); Flynn v. United States, 902 F.2d 1524, 1530-31 (10th Cir. 1990). In addition, decisions regarding the proper response to hazards, and whether and how to make federal lands safe for visitors are subject to this exception. Rosebush v. United States, 119 F.3d 438, 443 (6th Cir. 1997); Autery v. United States, 992 F.2d 1523, 1527 (11th Cir. 1993). Accordingly, the R and R reaches the proper conclusion on this issue, and Plaintiff's objection is overruled.

**Objection 18:** Plaintiff "objects to the magistrate's finding that individual officers acted reasonable [sic] when they used deadly force against Mr. Whisman." This objection is essentially a blanket objection to the entire 60 page R and R, and is not a proper objection due to its lack of specificity. Overly broad objections do not satisfy the objections requirement of Fed. R. Civ. P. 72(b)(2) or E.D.Mich. L.R. 72.1(D)(1). Miller v. Currie, 50 F.3d 373, 380 (6th Cir.1995). Vague objections which do not relate to specific findings by the Magistrate Judge do not merit review, and a court is not required to address such vague objections. Id.

Objection 18 is an almost four page recitation of Plaintiff's theory of the case, containing

only vague objections to certain factual findings made by the Magistrate Judge, most of which were addressed in Plaintiff's earlier objections. As the Court has already ruled, the finding in the R and R that the individual officers acted reasonably when they used deadly force against Mr. Whisman is correct. Plaintiff's objection is overruled.

**Objection 19:** Plaintiff objects to the analysis in the R and R addressing the liability of Defendant Regualos, contending that her allegations of Defendant Regualos' failure to train his officers were ignored.

The Court finds that the R and R thoroughly discusses and addresses Plaintiff's failure to train claim at pages 45-48 and 54-57. Further, as explained regarding Plaintiff's Objection 17, Plaintiff's failure to train claim is subject to the discretionary function exception of the Federal Tort Claims Act. Plaintiff's objection is overruled.

## III.    Order

Accordingly,

IT IS ORDERED that, with the exception regarding Objection 3 addressing the absence of a second collision, Magistrate Judge Hluchaniuk's Report and Recommendation, dated July 6, 2011, is ACCEPTED AND ADOPTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

Dated: September 13, 2011					s/Bernard A. Friedman_____
       Detroit, Michigan					BERNARD A. FRIEDMAN
							UNITED STATES DISTRICT JUDGE